UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIRON WASHINGTON, JR.,

        Plaintiff,

        v.                                         Case No. 24-cv-1386-bhl

LT. SCHROEDER,
CPL ESCHMANN,
CPL PUCHTER,
JOHN DOE SGT #1345,
CPL BOYER,
SGT MAY,
CO ERGISH,
T. MOORE,
S. BERAMIS,
SHERIFF DAVID W. ZOERNER,
DET KUKOWSKI,
DET CEPRESS,
DA THOMAS BINGER,
JESSICA L. KREJCAREK,
SGT SIMPSON, and
KENOSHA COUNTY,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Tiron Washington, Jr., who is currently incarcerated at the Kenosha County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On November 13, 2024, Washington paid the $405 civil case filing fee. This matter comes before the Court to screen the complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any

complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Washington, beginning in the summer of 2023, jail staff opened his legal mail outside of his presence. Specifically, he states that, on January 5, 2024, Defendant CO Ergish opened his legal mail in his presence after being told by a supervisor to do so. He states that the letter contained a USB drive and that Ergish informed him that the contents of the drive would have to be viewed outside of his presence. Washington asserts that he filed a grievance about the issue and was told that his discovery was kept safe in the corporal's office. It is not clear who, if anyone, reviewed the contents of the USB drive. According to Washington, CO Tyler Moore has delivered legal mail to him that was already opened.

Washington also alleges that, on October 17, 2023, he and others were removed from their cells. Initially, only his cell was searched, but after he pointed this out, other inmates' cells were also searched. Washington explains that when he returned to his cell there was a search warrant for documents and writings, which had been sworn by Defendant Detective Capress and signed by a judge. Washington asserts that he never was charged with intimidating a witness, which was the basis for the warrant. Washington asserts that, as permitted by the warrant, detectives went through every document in his cell, including his legal mail.

Washington next alleges that, on February 7, 2024, he was transferred from the Kenosha County Detention Center to the Kenosha Pretrial Facility, at which time he observed multiple letters in his property bag that he had written to friends and family but had not been delivered. Washington, who has multiple pending criminal charges, including for homicide, asserts that the people to whom the letters were addressed are not on his no-contact list and the letters did not contain contraband. Washington asserts that he wrote a grievance about this issue, but it was closed without a response.

Washington explains that he contacted a friend and signed his property over to her. When she arrived to pick up his property, jail staff turned over twenty-two outgoing letters to friends and family. They also turned over a letter to the Kenosha Police Department that Washington had written months earlier to obtain copies of policies and procedures. Washington asserts that failure to deliver this letter interfered with his ability to prepare for trial.

According to Washington, he complained about these issues to Defendant Corporal Eschmann, but she told him she was unable to do anything about mail issues. She told him to write another grievance and she would look into it. After Washington submitted the grievance, Defendant Sergeant Simpson responded to the grievance.

Washington next alleges that on August 16, 2024, he gave a court order identifying his no-contacts to Sergeant Doe, who gave a copy to Corporal Boyer. Washington asserts that the order proved there was no reason not to deliver his mail. He states that Sergeant Doe, Sergeant May, Corporal Puchter, and Corporal Boyer did nothing. According to Washington, Sergeant Simpson informed him that he looked into the mail issue and that the order regarding his outgoing mail was given by District Attorney Thomas Binger, Detective Kukowski, Detective Cepress, and Assistant District Attorney Jessica Krejcarek.

Washington also alleges that after a suppression hearing on January 18, 2024, his inmate account was zeroed out, which prevented him from using the phone and his tablet. He states that these services remained unavailable to him for seven days. Washington believes staff did this at the direction of the District Attorney to prevent him from contacting his friends and family and his attorney immediately after the hearing.

Finally, Washington asserts that, on October 25, 2024, he asked a jail guard to make copies of his legal work. Washington explains that the guard did so, but when he returned the paperwork

4

to Washington, four documents were missing. Washington accuses the guard of giving the documents to supervising officers and demanded their return.

## THE COURT'S ANALYSIS

Washington raises several issues, but his focus appears to be on the non-delivery of his mail to friends and family without justification. According to Washington, over the course of about a year, more than twenty letters that he wrote to friends and family were placed into his property bag rather than delivered. He states that the recipients were not on his no-contact list and that the letters did not contain contraband or threaten jail security. After many unanswered grievances, Washington finally learned that jail staff were holding his outgoing mail at the direction of District Attorney Binger, Detective Kukowski, Detective Cepress, and Assistant District Attorney Krejcarek. According to Washington, there was no legitimate basis for this order.

The First Amendment protects against the censorship of a prisoner's outgoing correspondence. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Of course, a prisoner's right to send mail is not absolute. It has long been recognized that purposes reasonably related to legitimate penological interests will justify limitations on a prisoner's First Amendment rights. *See Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989); *Rowe*, 196 F.3d at 782. For example, maintaining security and order, suppressing gang activity, and protecting the integrity of a criminal investigation are all legitimate governmental interests. *See, e.g.*, *Koutnik v. Brown*, 396 F. Supp. 2d 978, 984-95 (W.D. Wis. 2005) (citations omitted).

With the foregoing standard in mind, Washington states a claim against District Attorney Binger, Detective Kukowski, Detective Cepress, and Assistant District Attorney Krejcarek based on allegations that they instructed jail staff to place Washington's outgoing mail into his personal property rather than mail it without a legitimate reason for doing so. The Court acknowledges that

5

development of the record may reveal a legitimate governmental interest justifying the limitation and that immunity may shield the prosecutors from Washington's claims, but at this early stage, Washington states a First Amendment claim.

Washington does not, however, state a Sixth Amendment claim based on allegations that a letter to the Kenosha Police Department requesting copies of policies and procedures was not delivered. The Sixth Amendment guarantees persons charged with crimes the right "to have the assistance of counsel for his defense." Nothing in Washington's complaint suggests that there was any interference with his letters to his attorney, and it is unclear how the non-delivery of a letter to the police department would have interfered with his counsel's ability to defend him. Nor does Washington state a claim based on allegations that his legal mail was opened outside of his presence. Washington's allegations on this point are too vague to state a claim. He does not explain the nature of the mail that was opened, who opened it, or how often that occurred. *See Freeman v. Wilson*, No. 23-1962, 2023 WL 8274582, at *1 (7th Cir. Nov. 30, 2023) (citations omitted) (holding that the rule requiring legal mail to be opened in a prisoner's presence applies only to correspondence from a lawyer in pending or impending litigation or from a court about a non-public matter).

Nor does Washington state a class-of-one equal protection claim. The U.S. Supreme Court has explained that class-of-one claims typically arise in cases where "the existence of a clear standard against which departures, even for a single plaintiff, [can] be readily assessed." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008). They do not generally arise in cases where the defendant "was exercising discretionary authority based on subjective, individualized determinations." *Id*. In those cases, "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others,

6

because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise." *Id*. at 603. Allowing Washington to proceed on a class-of-one claim because he disagrees with prosecutors and law enforcement's assessment that he may attempt through written correspondence to interfere with an ongoing criminal investigation would undermine the very discretion they are entrusted with. As the U.S. Supreme Court noted, "It is no proper challenge to what in its nature is a subjective, individualized decision that it was subjective and individualized." *Engquist*, 553 U.S. at 604.

Washington also does not state a claim against jail staff who allegedly complied with the instructions not to deliver his outgoing mail. The Court cannot reasonably infer that jail staff had the authority to ignore or disregard instructions from the prosecutors and law enforcement involved in an ongoing investigation and criminal case against Washington. Washington asserts that jail staff knew that the people to whom his letters were addressed were not on his no-contact list, but this on its own is not a sufficient basis for jail staff who have no legal knowledge and no insight into the pending criminal case against Washington to question the adequacy of the instructions regarding Washington's outgoing mail. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (rejecting that argument that "any public employee who knows (or should know) about a wrong must do something to fix it" because "public employees are responsible for their own misdeeds but not anyone else's").

Washington also does not state a claim against jail staff based on allegations that they did not resolve his grievances. The alleged inadequacy of grievance procedure does not, in and of itself, give rise to a constitutional claim. *See Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015).

If a grievance procedure is constitutionally inadequate (*e.g.*, a prisoner does not receive a response in a timely manner), the remedy is to excuse the affected inmate from the exhaustion requirement. *Id*.

Further, Washington's allegations that unspecified jail staff zeroed out his account such that he was unable to make phone calls or use his tablet for a week is the type of relatively short-term and sporadic delay in communications that the Seventh Circuit has held is not actionable under the First Amendment. *See Rowe*, 196 F.3d at 782-83. Further, given that the issue was resolved rather quickly, the only reasonable inference is that it was the result of negligence, which is not actionable under the Constitution. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 328 (1986). Washington speculates that the brief interruption was also at the direction of the District Attorney and/or detectives involved in his criminal case, but he offers no factual basis for this conclusion, and given the speed with which the error was fixed, his speculation is not reasonable. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Next, even assuming it is actionable, a claim based on allegations that an officer at the direction of his supervising officers took copies of a search warrant, a court order regarding a no-contact list, and an affidavit Washington had written in support of a lawsuit is not properly joined in this action. Washington insists that these documents were removed from a pile of papers he asked the guard to copy. It is not clear why the guard would take these documents as versions could be obtained from the court or recreated by Washington, but whatever reason Washington believes exists, this isolated incident against jail staff does not arise out of the same transaction or occurrence as Washington's mail claim against the prosecutors and detectives. Accordingly, to the extent he wants to pursue this claim, he must do so in a separate case. *See* Fed. R. Civ. P. 18

8

Case 2:24-cv-01386-BHL   Filed 12/09/24   Page 8 of 10   Document 9

and 20; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits.").

Finally, Washington does not state a claim for indemnity against Kenosha County. The individuals against whom he states a claim do not work for Kenosha County. District Attorneys and Assistant District Attorneys are employed by the State of Wisconsin, and police detectives are employed by the City of Kenosha.

**IT IS THEREFORE ORDERED** that Washington fails to state a claim against Lt. Schroeder, Cpl. Eshmann, Cpl. Puchter, John Doe Sgt. #1345, Cpl. Boyer, Sgt. May, CO Ergish, T. Moore, S. Beramis, David W. Zoerner, Sgt. Simpson, and Kenosha County so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint and this order upon Kenosha Detective Kukowski, Detective Cepress, Kenosha County District Attorney Thomas Binger, and Assistant District Attorney Jessica Krejcarek pursuant to Federal Rule of Civil Procedure 4. Washington is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Kenosha Detective Kukowski, Detective Cepress, Kenosha County District Attorney Thomas Binger, and Assistant District Attorney Jessica Krejcarek shall file a responsive pleading to the complaint.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Washington is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on December 9, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge