UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIRON WASHINGTON, JR.,

    Plaintiff,

  v.            Case No. 24-cv-1386-bhl

DETECTIVE KUKOWSKI et al.,

    Defendants.

---

## DECISION AND ORDER

---

  Plaintiff Tiron Washington, Jr., is currently confined at the Kenosha County Jail and representing himself in this 42 U.S.C. §1983 action. He is proceeding on (1) a First Amendment claim against Deputy District Attorney Thomas Binger, Detective Kukowski, Detective Cepress, and Deputy District Attorney Jessica Krejcarek based on allegations that they instructed jail staff not to deliver Washington's outgoing mail but instead to place it in his personal property; (2) a First Amendment claim against the same Defendants based on allegations that they ordered jail staff to zero out Washington's jail account to prevent him from communicating with his friends and family; and (3) a Fourth Amendment claim against Cepress based on allegations that he obtained a search warrant for Washington's cell without probable cause. Washington also is proceeding on a state law indemnification claim against the State of Wisconsin and the City of Kenosha. Dkt. No. 18. On September 18, 2025, Binger, Krejcarek, and the State of Wisconsin filed a motion for summary judgment. Dkt. No. 44. Less than a week later, on September 23, 2025, Detective Kukowski, Detective Cepress, and the City of Kenosha filed their own motion for summary judgment. Dkt. No. 44. For the reasons discussed below, the Court will grant the motions and dismiss this case.

## BACKGROUND

  Despite what the voluminous filings might suggest, the facts underlying Washington's claims are straightforward. At the relevant time, Washington was incarcerated at the Kenosha Pretrial Detention Facility on charges of 1st degree intentional homicide and possession of a

firearm by a convicted felon. Binger and Krejcarek were deputy district attorneys for Kenosha County, and Kukowski and Cepress worked for the Kenosha police department as detectives. Kukowski and Cepress were the lead detectives and investigators in Washington's underlying criminal charges. Dkt. No. 41 at ¶¶2-3; Dkt. No. 48 at ¶2; Dkt. No. 67 at ¶1.

On August 11, 2023, jail staff notified Defendants via email that Washington was sending nonlegal mail marked as "legal mail" to non-lawyers so that the mail would not be processed according to jail procedures for processing nonlegal mail. One of the individuals Washington was sending the mislabeled mail to was Taylore Dabney, a co-defendant in Washington's underlying criminal case. On August 16, 2023, Krejcarek notified jail staff via email that staff should photocopy Washington's mail and send it to Kukowski and Cepress so they could "monitor his correspondence but not tip [their] hat that [they] are doing so." Krejcarek clarified that this request applied to "all mail to everyone except Attorney Corey Mehlos," Washington's legal counsel at the time. Dkt. No. 48 at ¶¶3-9; Dkt. No. 56-1 at 17-19; Dkt. No. 67 at ¶¶4.

A couple of months later, on October 17, 2023, Binger emailed a similar request to jail staff. Binger emphasized that Washington is charged with murdering a witness against him. He explained that Washington had sent letters encouraging people to contact witnesses in his pending case to tell them to avoid coming to court and to change their statements against him. He stated that because Washington had written "attorney" on the envelopes, jail staff had not inspected the letters. He requested that all of Washington's "incoming and outgoing mail, other than mail to or from his attorney Corey Mehlos, be opened, inspected and copied." He also asked that jail provide the copies to Cepress and Kukowski. Dkt. No. 40-2.

That same day, Kukowski and Cepress executed a warrant to search Washington's cell, which Cepress had obtained the day before. In his affidavit in support of the search warrant application, Cepress explained that he and Kukowski were made aware that Washington had been sending nonlegal mail falsely marked as "legal mail" to non-lawyers, including to an individual who was charged with helping Washington avoid law enforcement. Cepress included a relevant portion of one such letter in his affidavit. He explained that detectives had been receiving copies only of Washington's outgoing mail, and they wanted "to see if he ha[d] any incoming mail that would assist Detectives in investigating if acts of persuading witnesses have been taking place by the individuals that he is writing [to]." A judge signed the warrant on October 16, 2023. Kukowski and Cepress explain that they did not search any legal mail in Washington's cell, nor did they take

2

any correspondence out of his cell. They also assert that no additional evidence was found. Dkt. No. 47-1; Dkt. No. 48 at ¶¶11-12.

Defendants assert that at no time did they instruct jail staff not to deliver Washington's mail. They explain that they do not have the authority to direct jail staff on how to enforce or manage inmate mail. They also explain that the Kenosha County District Attorney's office does not have the authority to zero out an inmate's jail account. Dkt. No. 41 at ¶4; Dkt. No. 48 at ¶¶3, 13.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Washington asserts that Defendants violated his First Amendment rights when they directed jail staff to hold his outgoing mail and zero out his jail account to interfere with his ability to communicate with friends and family. The First Amendment protects against the censorship of a prisoner's outgoing correspondence. *See Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). But Washington's claim fails because the record shows that the Defendants were not responsible for Washington's mail not being sent or for his account being zeroed out. Under §1983, an individual must be personally involved in the alleged constitutional violation to be liable. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Here, Defendants explain that they did not direct jail

staff to withhold Washington's mail or zero out his account. Indeed, they explain that they do not have the authority to give such direction. Moreover, because there is no vicarious liability under §1983, Defendants are not liable for the decisions made by jail staff. *See Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998) (highlighting "the absence of vicarious liability in a §1983 action").

Washington mischaracterizes the record in an attempt to create a triable issue on whether Defendants were responsible for the harm about which he complains. He first highlights Krejcarek and Binger's request that jail staff copy his nonlegal, outgoing mail and provide copies to Kukowski and Cepress. He states that under "the collective knowledge doctrine" Defendants had notice of jail staff's actions. It is unclear what Washington means by "the collective knowledge doctrine," and the Court will not speculate on that point. Suffice it to say, Washington has provided no evidence to support his speculation that jail staff informed Defendants of their decision not to mail Washington's mail. Nor is there evidence that Defendants gave jail staff any instruction to withhold his mail. Washington also asserts that in asking jail staff to copy his nonlegal, outgoing mail, Defendants became the jail staff's supervisors. This assertion is also unsupported by any evidence. The record indicates that Defendants *asked* jail staff to make copies of Washington's mail; they did not *order* jail staff to do anything. As Defendants note, they lacked the authority to order jail staff to take any actions with regard to Washington's mail. The mere fact that jail staff agreed to do as Defendants asked does not mean that Defendants became jail staff's supervisors. Washington's claim to the contrary is unsupported by any facts and is wrong as a matter of law.

Washington also complains that Defendants did not secure a warrant to search his mail, so their doing so violated the First Amendment. But as the Court explained in the screening order, as far as pretrial detainees are concerned, "[n]either the right of free speech nor the right of privacy is absolute, [and] the interests they protect must be considered against important governmental interests in regulation." *Smith v. Shimp*, 562 F.2d 423, 425 (7th Cir. 1977). Jail officials have a legitimate interest in maintaining the safety and security of the jail, and policies that deter a substantial threat to jail security justify the burden imposed on a pretrial detainee's freedom to communicate in a private manner. *Id.* at 426. Indeed, it has long been held that "the interest of the state in monitoring the nonprivileged correspondence of the pretrial detainees justifies the minor burden that it places on their freedom to communicate with friends and relatives." *Id*. Accordingly, Defendants were not required to secure a warrant before reviewing copies of Washington's mail because Washington had no privacy interest in his nonlegal, outgoing mail.

Washington also asserts that a jail sergeant told him that his family was not receiving mail because Defendants had ordered jail staff not to mail his letters. Washington provides declarations from other inmates who assert that they also heard the sergeant's statement. But it does not matter how many people claim to have heard what the sergeant said because the alleged statement is inadmissible hearsay and therefore is insufficient to overcome a motion for summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). In short, because Washington provides no admissible evidence from which a jury could reasonably conclude that Defendants were responsible for the non-delivery of his mail and the zeroing out of his jail account, Defendants are entitled to summary judgment on this claim.

Finally, Cepress is entitled to summary judgment on Washington's claim that he violated the Fourth Amendment when he secured a warrant to search Washington's cell that was not supported by probable cause. Cepress provided an affidavit of sworn facts, and a judge signed the warrant, finding probable cause for its issuance. A review of the warrant application and supporting affidavit, *see* Dkt. No. 47-1, confirm that probable cause existed, and no jury could reasonably conclude that Cepress obtained the search warrant improperly. *See Edwards v. Jolliff-Blake*, 907 F.3d 1052, 1057 (7th Cir. 2018) ("The law affords 'great deference' to the probable cause finding made by the judge who evaluated the warrant application in the first instance" and a reviewing court "will uphold that determination so long as there is a 'substantial basis' for concluding 'that a search would uncover evidence of wrongdoing.'").

Because Binger, Krejcarek, Kukowski, and Cepress are entitled to summary judgment, Washington's claims for indemnity against the City of Kenosha and the State of Wisconsin must also be dismissed.

**IT IS THEREFORE ORDERED** that Defendants' summary judgment motions (Dkt. Nos. 38, 44) are **GRANTED** and Washington's motions in opposition to summary judgment and for a hearing (Dkt. Nos. 55, 60) are **DENIED**. This action is **DISMISSED**, and the Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 12, 2026.

s/ *Brett H. Ludwig*  
BRETT H. LUDWIG  
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.